Ronald **GORDON**, Plaintiff,

v.

Nelson Bunker **HUNT**, et al.,
Defendants.

No. 82 Civ. 1318 (MEL).

United States District Court,
S.D. New York.

March 10, 1983.

See also, D.C., 551 F.Supp. 509.

Herbert I. Deutsch, P.C., New York City, for plaintiff; Herbert I. Deutsch, Robert E. Frey, New York City, Jeanne M. Andersen, Law Student, of counsel.

Baer, Marks & Upham, New York City, for defendant Commodity Exchange, Inc.

Townley & Updike, New York City, Kirkland & Ellis, Chicago, Ill., for defendant The Bd. of Trade of the City of Chicago.

LASKER, District Judge.

The instant action concerns the dramatic rise in silver prices during 1979 and early 1980. The underlying facts are outlined in *Minpeco, S.A. v. ContiCommodity Services, Inc.,* 552 F.Supp. 332 (S.D.N.Y.1982), familiarity with which is assumed.

The Chicago Board of Trade and the Commodity Exchange, Inc. ("the Exchanges") move pursuant to Fed.R.Civ.Pr. 12(b)(6) to dismiss the claims against them. Gordon alleges that the Exchanges

> "intentionally, recklessly or negligently, out of their own self-interest, failed to maintain an orderly market in silver futures contracts in violation of Sections 5(d) and 5a(8) of the Commodity Exchange Act, the regulations issued thereunder and the respective charters, by-

laws, rules and regulations of said Exchanges."

(Complaint ¶ 228). In particular, he alleges that the Exchanges failed to take necessary steps to prevent price manipulation, such as "raising margins specifically directed against the concentrated long positions, limit[ing] the amount of a long position, [and] restricting delivery." (Complaint ¶ 128). He further alleges that the Exchanges' failure to act was motivated by an intent to profit from the increased volume of trading resulting from the manipulation. (Complaint ¶ 157).

The Exchanges contend that the allegations fail to state a claim because (1) the Commodities Exchange Act provides a right of action only for failure to act and it is undisputed that the Exchanges did act (Exchange Brief at 34–38); (2) the Commodities Exchange Act does not provide a cause of action for conduct which, as here, was allegedly approved by the Commodities Futures Trading Commission ("CFTC") (*Id.*); and (3) the Complaint fails adequately to plead bad faith (Exchange Brief at 39–43).

Gordon answers that (1) the Complaint does specify that the Exchanges failed to act; (2) the CFTC did not approve the Exchanges' conduct (although facts, as distinct from allegations, are not at issue on this motion); and (3) the Complaint fully satisfies the requirement that bad faith be alleged.

An examination of the Exchanges' motion leads us to conclude that it is primarily a motion for summary judgment in the guise of a motion to dismiss. We make this comment to illuminate our discussion below.

In *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Curran,* 456 U.S. 353, 102 S.Ct. 1825, 72 L.Ed.2d 182 (1982), the Supreme Court held that the Commodity Exchange Act created a private right of action for violation of its provisions. Among the claims upheld in *Curran*[1] was a complaint against the New York Mercantile Exchange which alleged that

---

1. Four cases were consolidated for review in *Curran,* only one of which involved a claim against an exchange.

"the Exchange knew, or should have known, of [the alleged] conspiracies but failed to perform its statutory duties to . . . prevent manipulation of the contract market."

456 U.S. at 371, 102 S.Ct. at 1835. In particular, it was alleged that the New York Mercantile Exchange had failed to "declare an emergency, to require the shorts and the longs to participate in an orderly liquidation, and to authorize truck deliveries." *Id.*

■ The Exchanges' contention in this case that Gordon complains only of the adequacy of the actions taken by the Exchanges, not of their failure to act, is unpersuasive. Gordon's allegation is that the Exchanges failed to fulfill their statutory duty to prevent manipulation. Whether or not the actions that they took fulfilled their duty is a question of fact which cannot be decided on a motion to dismiss. That the Exchanges took some actions with respect to silver trading during the period in question is not dispositive: Gordon alleges that such actions as they took were not aimed at preventing the manipulation, but at profiting from it, and that they did not actually prevent manipulation.

■ The issue whether the CFTC approved the Exchanges' activities also presents a question of fact, and indeed the parties' arguments relate solely to the facts at issue and not to the pleadings, as they should. The Exchanges contend that the CFTC approved and ratified their activities; Gordon contends that they did not. Each party relies on public documents, including the Report of the Commodity Futures Trading Commission on Recent Developments in the Silver Futures Markets, Sen. Comm. Agriculture, Nutrition, and Forestry, 96th Cong. 2d Sess. (1980) and the CFTC Division of Trading and Markets, Rule Enforcement Review of the Commodity Exchange, Inc. (September 29, 1981). From the sparse record before us it is impossible to draw any conclusions as to the relationship between the CFTC and the Exchanges and whether or not the CFTC approved the Exchanges' actions. The question of the weight to be given to the CFTC's approval or disapproval of the Exchanges' actions must await a more fully developed record.

■ Finally, we conclude that Gordon's allegations of bad faith are adequate to satisfy even the narrow definition set forth in *P.J. Taggares Co. v. New York Mercantile Exchange,* 476 F.Supp. 72, 77 n. 22 (defining bad faith as "ulterior motive, for example, personal gain.") The alleged ulterior motives of the Exchanges are detailed in ¶¶ 157(a) and (b) of the Complaint, and include allegations that the Exchanges' actions were motivated by hope of personal gain for members of their Boards of Governors. Since the Complaint clearly does allege bad faith, it is unnecessary to determine whether such an allegation is necessary to state a claim in light of *Curran,* which could well be argued to authorize suit on a less restrictive basis.

Accordingly, the motion of the Exchanges to dismiss the Complaint is denied.

It is so ordered.