Douglas J. MICHELSON, Plaintiff,

v.

MERRILL LYNCH PIERCE, FENNER & SMITH, INC., Nelson Bunker Hunt, William Herbert Hunt, Douglas Herbert Hunt, Lamar Hunt, International Metals Investment Co. Ltd., John J. Conheeny, Conti-Commodity Services Inc., Conti-Capital Management Inc., Conti-Capital Ltd., Norton Waltuch, Gilian Financial, ACLI International Commodity Services, Inc., Bache Halsey Stuart Shield Inc., Shiek Mohammed Aboud Al Amoudi, Shiek Ali Bin Mussalem, Mahmoud Fustok, Prince Faisal Bin Abdullah, Naji Robert Nahas, Banque Populaire Suisse, Advicorp Advisory and Financial Corporation S.A., Placid Oil Company, Commodity Exchange, Inc., the Chicago Board of Trade, Defendants.

No. 83 Civ. 8898 (MEL).

United States District Court, S.D. New York.

Oct. 2, 1985.

Douglas J. Michelson, pro se.

Rogers & Wells, New York City, for defendants Merrill Lynch, Pierce, Fenner & Smith, Inc. and John J. Conheeney; William R. Glendon, Guy C. Quinlan, Susan A. Garcia, James M. Lane, Peter L. Thoren, New York City, of counsel.

Paul, Weiss, Rifkind, Wharton & Garrison, New York City, for ContiCommodity Services Inc., ContiCapital Management, Inc., ContiCapital, Ltd., Richard A. Rosen, New York City, of counsel.

Kaye, Scholer, Fierman, Hays & Handler, New York City, for defendant Norton Waltuch; Steven J. Glassman, New York City, of counsel.

Townley & Updike, New York City, Kirkland & Ellis, Chicago, Ill., for defendant Bd. of Trade of the City of Chicago; James K. Leader, New York City, and John E. Angle, Garrett B. Johnson, T. Webster Brenner, Chicago, Ill., of counsel.

Baer, Marks & Upham, New York City, for defendant Commodity Exchange, Inc.; Barry J. Mandel, Thomas E. Albright, Kristine M. Reddington, New York City, of counsel.

Curtis, Mallet-Prevost, Colt & Mosle, New York City, for defendant Mahmoud Fustok; Herbert Stoller, New York City, of counsel.

Gilbert, Segall & Young, New York City, and Arnold & Porter, Washington, D.C., for defendant Banque Populaire Suisse.

Shank, Irwin, Conant & Williamson, Dallas, Tex., John R. Bartels, Jr., White Plains, N.Y., for defendants Nelson Bunker Hunt, William Herbert Hunt, Douglas Herbert Hunt, Lamar Hunt and Placid Oil Co.; Robert Everett Wolin, Dallas, Tex., of counsel.

Morrison, Cohen & Singer, P.C., and Finley, Kumble, Wagner, Heine & Underberg, New York City, for defendant Intern. Metals Inv. Co., Ltd.

Sullivan & Cromwell, New York City, for Prudential-Bache Sec., Inc. (formerly known as Bache Halsey Stuart Shields Inc.).

LASKER, District Judge.

Douglas J. Michelson is a resident of New Mexico and a rare metals trader who suffered heavy financial losses when the price of silver increased dramatically in the latter half of 1979 and in early 1980. Michelson, who appears *pro se*, has filed a sixty-one page complaint asserting thirty-six causes of action against twenty-four named defendants[1] contending that they participated in a conspiracy in 1979–80 to raise the price of silver in an effort to corner the silver market.

Currently pending are motions: (1) by Merrill Lynch to dismiss pursuant to Fed. R.Civ.P. 12(b)(6) twenty-three claims and 22 paragraphs of factual allegations in the complaint based upon the doctrines of *res judicata* and/or collateral estoppel; (2) by the Exchanges to dismiss under Rule 12(b)(6) all claims against them for failure to state a claim; (3) by nine non-exchange defendants ("Certain Defendants")[2] to dismiss pursuant to Rule 12(b)(6) eight counts of the complaint for failure to state a claim; (4) by John J. Conheeny to dismiss the complaint under Rules 12(c), 12(b)(2), 12(b)(5), or 12(b)(6) based upon insufficient service of process; and (5) by Norton Waltuch and ContiCommodity Services, Inc. under Rule 12(b)(5) to dismiss the complaint on the ground of insufficient service of

---

**1.** They are: Merrill Lynch, Pierce, Fenner & Smith, Inc. ("Merrill Lynch"), Nelson Bunker Hunt, William Herbert Hunt, Douglas Herbert Hunt, Lamar Hunt (hereinafter collectively referred to as "the Hunts"), International Metals Investment Co. Ltd. ("International Metals"), John J. Conheeney, Conti-Commodity Services Inc., Conti-Capital Management Inc., Conti-Capital Ltd., Norton Waltuch, Gilian Financial, ACLI International Commodity Services Inc. ("ACLI"), Prudential-Bache Securities, Inc. ("Prudential-Bache"), Sheik Mohammed Aboud

Al Amoudi, Sheik Ali Bin Mussalem, Mahmoud Fustok, Prince Faisal Bin Abdullah, Naji Robert Nahas, Banque Populaire Suisse, Advicorp Advisory and Financial Corp. S.A. ("Advicorp"), Placid Oil Co. ("Placid Oil"), and Commodity Exchange, Inc. and the Chicago Board of Trade (hereinafter collectively referred to as "the Exchanges").

**2.** ACLI, International Metals, the Hunts, Placid Oil, Fustok, and Prudential-Bache.

process. For the reasons set forth below, Merrill Lynch's motion is granted in part and reserved in part; the motion of the Exchanges will be granted unless within thirty days Michelson amends his complaint; the non-exchange defendants' motion is granted in part, denied in part, and reserved in part and part will be granted unless Michelson amends his complaint within thirty days; and the motions of Conheeny, ContiCommodity Services, Inc. and Waltuch are granted.

## I.

This action traces its origins back to 1980 when Merrill Lynch filed suit against Michelson in the United States District Court for the District of New Mexico to recover a debt of approximately $118,000. From 1974 until January 9, 1980, Michelson traded silver, gold and copper futures on margin through an account at Merrill Lynch. Beginning in the latter half of 1979 and continuing through the first quarter of 1980, the price of silver rose to unprecedented levels, allegedly as a result of a conspiracy among the named defendants to corner the world's supply of silver. In January of 1980, Michelson held a number of short positions in the market and, when he failed timely to meet a margin call, Merrill Lynch liquidated his account on January 10, 1980 through purchases of gold and silver contracts. After the liquidation, Michelson continued to owe approximately $118,000 and Merrill Lynch initiated its suit to recover that amount.

Michelson's answer asserted sixteen counterclaims against Merrill Lynch. Merrill Lynch subsequently moved for summary judgment on its pleading and to dismiss the counterclaims and, in an August 1982 opinion, Judge Bratton dismissed eleven of the counterclaims with prejudice. The dismissed counterclaims alleged that Merrill Lynch was liable to Michelson as a result

of its negligence (counts II, IV, VI & IX), breaches of fiduciary duty (counts I & V), failure to issue proper and accurate margin calls (counts III, VII & VIII), and its failure to give effect to a three-party security agreement between Michelson, Merrill Lynch, and the First National Bank of Albuquerque (counts XIII, XIV & XV), all of which allegedly violated Section 4b of the Commodity Exchange Act. 7 U.S.C. § 6b (1982). The remaining portions of Merrill Lynch's motion were denied due to the presence of material questions of fact. *See Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Michelson,* No. 80–0095 HB (D.N.M. Aug. 12, 1982) (hereinafter *"Merrill Lynch v. Michelson"), reprinted in* Merrill Lynch's Memorandum of Law in Support of Its Motion to Dismiss, at Exhibit C.[3]

Merrill Lynch moved for reconsideration of this decision and in an opinion dated August 3, 1983 was awarded summary judgment on its pleading. The opinion was confined to the issue of whether Merrill Lynch was empowered to liquidate Michelson's account notwithstanding the fact that a statement by the Merrill Lynch official in charge of the account to Michelson created the inference that a partial payment of the margin call would satisfy Merrill Lynch. Judge Bratton found that the agreement between Michelson and Merrill Lynch relating to the account "gave Merrill Lynch the right to liquidate Michelson's account whenever in its discretion it considered that action necessary for its protection[,]" and that "Merrill Lynch considered liquidation ... to be necessary for its protection." *Merrill Lynch v. Michelson,* No. 80–095 HB, slip op. at 3 (D.N.M. Aug. 3, 1983), *reprinted in* Merrill Lynch's Memorandum of Law, at Exhibit D.

In an accompanying opinion issued at the same time, Judge Bratton also dismissed without prejudice Michelson's five remaining counterclaims on the ground that Mi-

---

**3.** The five counterclaims determined to involve fact questions were based upon breach of contract (counts IX & X), Merrill Lynch's efforts to manipulate the silver market contrary to Sections 8, 9 and 13 of the Commodity Exchange Act (count XI), Merrill Lynch's alleged execu-

tion of a fictitious sale and/or an accommodation trade in violation of Section 4c of the Commodity Exchange Act (count XII), and violations of federal antitrust law (count XVI). Judge Bratton did not elaborate on the nature of these fact questions.

chelson's *pro se* pre-trial order submitted sometime in the summer of 1983 did not "inform the court or Merrill Lynch of the factual basis of [Michelson's] claims or the legal theories on which he relies." *Merrill Lynch v. Michelson*, No. 80–095 HB, slip op. at 3 (D.N.M. Aug. 3, 1983), *reprinted in* Merrill Lynch's Memorandum of Law, at Exhibit E. Michelson's counsel had withdrawn from the case in June of 1981 and Michelson has appeared *pro se* since that time.

Michelson filed the complaint at issue in this case in July of 1983 in the District of New Mexico. The complaint embodies the fifteen counterclaims pleaded in the earlier action and added as defendants various foreign and domestic individuals and institutions who allegedly participated, along with Merrill Lynch, in the conspiracy to manipulate the silver market in 1979–80. In addition, Michelson adopted and expanded upon the thirty-three paragraphs of factual allegations supporting his counterclaims to allege, in 136 paragraphs, *inter alia*, that the defendants conspired to raise the price of silver so as to force silver traders holding short positions out of the market (para. 70); that the Exchanges acted in bad faith by failing to take "emergency actions" to preserve orderly market conditions (paras. 72–79); and that Merrill Lynch acted in furtherance of the above conspiracy by executing many "wash sales" so as to create volume in the silver market and establish the appearance of a legitimate market (paras. 130–31). Michelson now alleges that one or more defendants have violated the federal Racketeer Influenced and Corrupt Organizations ("RICO") Act, 18 U.S.C. §§ 1961–68 (1982), various provisions of the Commodity Exchange Act, extortion, mail and wire fraud statutes, 18 U.S.C. §§ 1951, 1341 & 1343 (1982), and New Mexico's anti-trust, RICO, unfair trade practice and criminal laws.

After the complaint was dismissed as to a number of defendants by Judge Bratton for lack of personal jurisdiction, Michelson's case was transferred *sua sponte* to this District in December of 1983. Proceedings were delayed for more than one year owing to a dispute between the parties regarding the sufficiency of Michelson's service of process upon a number of defendants. At a conference held on January 30, 1985 we granted Michelson until March 15, 1985 to re-serve the defendants and the defendants were subsequently granted until April 15, 1985 to move to dismiss or to answer the complaint. The motions discussed here constitute the fruits of these directives.

## II.

### MERRILL LYNCH

#### A.

Merrill Lynch's principal argument in support of its motion to dismiss twenty-three of the claims asserted against it[4] is that *res judicata* and/or collateral estoppel, applicable as a result of Judge Bratton's grants of summary judgment in 1982 and 1983, bar Michelson from pleading any claim or alleging any facts in this action which relate to his Merrill Lynch account and which have already been the subject of a final adjudication.

Merrill Lynch contends that Michelson's complaint consists of four categories of claims precluded on *res judicata* grounds:[5] (1) claims dismissed with prejudice in the New Mexico proceeding (counts XXV–XXXII & XXXIV); (2) claims asserted only against Merrill Lynch which relate to Michelson's Merrill Lynch account and which Michelson should have raised in the earlier

---

**4.** Merrill Lynch does not move to dismiss those claims alleging violations of federal and New Mexico antitrust laws (counts I–II, IV–VI & VIII). Merrill Lynch also joins in most of the motion of "Certain Defendants" to dismiss all or part of eight claims in the complaint, three of which (counts X, XI & XVI) are in addition to the twenty-three claims covered by Merrill Lynch's motion. Disposition of the motion of "Certain Defendants" is discussed *infra*.

**5.** *See* summary sheet attached to Merrill Lynch's Reply Letter in Support of Its Motion to Dismiss, May 29, 1985, at Exhibit 4.

proceeding (counts XIV-XV, XXIII–XXIV, & XXXV–XXXVI); (3) claims pleaded against all of the defendants but which are precluded to the extent that they relate to Michelson's account (counts III, VII, IX, XII & XIII); and (4) claims dismissed without prejudice in the earlier proceeding but which should now be dismissed on the merits because Merrill Lynch was awarded judgment on its pleading by Judge Bratton (counts XXI–XXII & XXXIII). Merrill Lynch also argues that collateral estoppel bars the allegations in the complaint relating to Michelson's account (complaint paras. 90–92, 96, 98, 108–11, 113–18, 121–24, 126–27 & 136).

Although Michelson proffers numerous arguments as to why *res judicata* or collateral estoppel ought not bar his claims, we find of particular relevance to the issues raised by this motion his assertion that Merrill Lynch did not obtain a final judgment on the merits in the New Mexico proceedings. Michelson contends, *inter alia,* that the New Mexico judgment is void because the case was decided through summary judgment, thereby denying him his constitutional right to a jury trial, and that there was no final judgment as to his counterclaims which were dismissed without prejudice.

### B.

■■■ *Res judicata* bars parties to a lawsuit from relitigating claims or defenses which were actually adjudicated or might have been litigated or adjudicated in an earlier action between them in which there has been a final judgment on the merits. *See Commissioner v. Sunnen,* 333 U.S. 591, 597–98, 68 S.Ct. 715, 719, 92 L.Ed. 898 (1948) ("Once a party has fought out a matter in litigation with the other party, he cannot later renew that duel"); *Tucker v. Arthur Anderson & Co.,* 646 F.2d 721, 727 (2d Cir.1981); *Browning Debenture Holders' Committee v. DASA Corp.,* 605 F.2d

35, 39 (2d Cir.1978). Whether *res judicata* bars litigation of claims in a second action depends, as the Court of Appeals for this Circuit has explained, upon

> whether a different judgment in the second action would impair or destroy rights or interests established by the judgment entered in the first action, whether the same evidence is necessary to maintain the second cause of action as was required in the first, and whether the essential facts and issues in the second were present in the first.

*Herendeen v. Champion International Corp.,* 525 F.2d 130, 133–34 (2d Cir.1975) (footnotes omitted).[6]

### C.

■■■ In this case, *res judicata* bars many of the claims asserted against Merrill Lynch notwithstanding the fact that Michelson was not afforded an opportunity to present his case to a jury in New Mexico, or the fact that five of Michelson's counterclaims were dismissed without prejudice. Merrill Lynch obtained a final judgment on the merits in the New Mexico proceeding dismissing with prejudice eleven of Michelson's counterclaims (counts I–VIII & XIII–XV), and awarding Merrill Lynch summary judgment on its pleading. *See Merrill Lynch v. Michelson,* No. 80–095 HB (D.N.M. Oct. 21, 1983), *aff'd mem.,* Nos. 83–2473 & 83–2595 (10th Cir. Jan. 22, 1985), *reprinted in* Merrill Lynch's Reply Letter in Support of Its Motion to Dismiss, May 29, 1985, at Exhibits 1 and 3. Claims adjudicated through summary judgment are regarded as final judgments on the merits, *see, e.g., Weston Funding Corp. v. Lafayette Towers, Inc.,* 550 F.2d 710, 713–15 (2d Cir.1977) (noting that dismissals of claims prior to trial may be on the merits), and thus may be accorded *res judicata* effect. While Michelson is correct that the five counterclaims dismissed without prejudice

---

**6.** The related doctrine of collateral estoppel also bars parties from relitigating an issue of law or fact "that was raised, litigated, and actually decided by a judgment in a prior proceeding between the parties, if the determination of that issue was essential to the judgment, regardless of whether or not the two proceedings are based on the same claim." *NLRB v. United Technologies Corp.,* 706 F.2d 1254, 1260 (2d Cir.1983).

were not final adjudications on the merits, *see In re Greenwald,* 48 B.R. 263, 270 (S.D.N.Y.1984), *res judicata* bars Michelson from attempting to litigate again claims of his which were dismissed with prejudice after full consideration in the New Mexico proceeding.

The claims in Michelson's complaint most obviously barred on *res judicata* grounds are those which Judge Bratton previously dismissed with prejudice in his 1982 decision. *See Merrill Lynch v. Michelson,* No. 80–0095 (D.N.M. Aug. 12, 1982), *reprinted in* Merrill Lynch's Memorandum of Law, at Exhibit C.[7] Michelson seeks to re-plead these claims in this action as counts XXV–XXXII and they are dismissed with prejudice.

■ Similarly precluded for reasons of *res judicata* are the counts in the complaint relating to Merrill Lynch's issuance of proper and accurate margin calls and the propriety of Merrill Lynch's decision to liquidate Michelson's account that might have been litigated or adjudicated in the New Mexico proceedings. Count XXII falls into this category by alleging that Merrill Lynch breached its contract with Michelson when it liquidated his account. Although Judge Bratton found that a fact question existed as to this issue, *see* note 3 *supra,* and dismissed the corresponding counter-claim without prejudice, we now hold that *res judicata* bars Michelson's claim because a finding adverse to Merrill Lynch on this issue would impair or destroy rights or interests acquired when Judge Bratton awarded Merrill Lynch judgment on its pleading.

The same reasoning applies to counts XXIII and XXIV, which allege that Merrill Lynch did not take delivery of silver relat-ed to Michelson's account and that this conduct was a breach of contract (count XXIII) and a fraud perpretrated upon Michelson contrary to Section 4b of the Commodity Exchange Act, 7 U.S.C. § 6b (1982), (count XXIV). Additionally, counts XXXV and XXXVI allege that Merrill Lynch conducted unauthorized trades in Michelson's account which respectively were in violation of Commodity Exchange Act Section 4b and were negligent. All four claims relate exclusively to the fact that Merrill Lynch actually liquidated Michelson's account and therefore cannot be re-litigated here. Accordingly, counts XXII–XXIV and XXXV–XXXVI are also dismissed with prejudice.

Merrill Lynch also moves to dismiss on *res judicata* grounds five claims asserted against all the defendants to the extent that they relate to or arise out of Michelson's account with Merrill Lynch. Counts III and VII allege that Merrill Lynch, its fellow brokers, and the Exchanges respectively violated the Robinson-Patman Act, 15 U.S.C. § 13 (1982), and New Mexico's anti-price discrimination statute, N.M. STAT.ANN. §§ 57–14–1 to 57–14–9, by discriminating on the basis of price among purchasers of silver. While these claims appear to relate to the complaint's allegations that Merrill Lynch participated in the general conspiracy among the defendants to increase silver prices, Merrill Lynch's motion to dismiss these claims is granted in part to the extent that they relate to Merrill Lynch's decision to liquidate Michelson's account.

■ Merrill Lynch's motion to dismiss counts XII, XIII, and that portion of count IX asserted against all the defendants [8] is

---

7. The following claims in Michelson's current complaint match the counterclaims dismissed with prejudice by Judge Bratton in his August 12, 1982 opinion:

| Current Claim | Dismissed Counter-Claim |
| --- | --- |
| XXV | XXXI |
| XXVI | II |
| XXVII | III |
| XXVIII | IV |
| XXIX | V |
| XXX | VI |
| XXXI | XIII |
| XXXII | XIV |
| XXXIV | XV |

*See* Merrill Lynch's Memorandum of Law in Support of Its Motion To Dismiss, at Exhibit F.

8. That portion of count IX alleges that all of the

also granted in part to the same extent and for the same reason discussed above. In addition, the remaining portion of count IX, which alleges that Merrill Lynch accelerated Michelson's payment on his account in bad faith contrary to New Mexico law, N.M.STAT.ANN. § 55–1–208, is barred for reasons of *res judicata* in light of Judge Bratton's finding that Merrill Lynch's margin calls upon Michelson's account were not improper. *See Merrill Lynch v. Michelson*, No. 80–0095 HB, slip op. at 3 (D.N.M. Aug. 12, 1982), *reprinted in* Merrill Lynch's Memorandum of Law, at Exhibit C.

■ As to the remaining claims which Merrill Lynch moves to dismiss, while they may be based upon unlawful conduct other than Merrill Lynch's decisions to issue margin calls and to liquidate Michelson's account—issues conclusively adjudicated in the New Mexico proceedings, Michelson has not described with sufficient particularity the acts of Merrill Lynch that purport to be the bases for these claims.[9] Accordingly, counts XIV–XV, XXI and XXXIII will be dismissed with prejudice [10] unless within thirty days of the date of filing of this Memorandum Michelson amends his

complaint to re-plead these claims with required particularity.

Finally, Merrill Lynch moves to strike twenty-two paragraphs of factual allegations (complaint paras. 90–92, 96, 98, 108–111, 113–18, 121–24, 126–27 & 136, at 29–31, 33–36 & 38) on the ground that they are prohibited by collateral estoppel as a result of Judge Bratton's findings. In light of the foregoing findings, we question the utility of undertaking a lengthy analysis of which of the above paragraphs are precluded by the New Mexico proceedings. A decision as to this aspect of Merrill Lynch's motion is accordingly reserved pending a conference with counsel to consider further the issue.

Accordingly, Merrill Lynch's motion to dismiss counts III, VII, IX, XII–XV and XXI–XXXVI is granted and decision is reserved as to the remainder of its motion.

### III.

### THE EXCHANGES

The Exchange defendants, the Chicago Board of Trade ("CBOT") and the Commodity Exchange, Inc. ("COMEX"), move to dismiss the entire complaint against them

defendants engaged in deceptive and unconscionable trade practices contrary to New Mexico law, N.M.STAT.ANN. § 57–12–3. Counts XII and XIII allege that all of the defendants have violated the federal RICO statute, 18 U.S.C. §§ 1961–68 (1982), based upon unlawful interference with commerce by violence, threats or extortion contrary to 18 U.S.C. § 1951 (1982) (count XII), and by mail or wire fraud contrary to 18 U.S.C. §§ 1341 & 1343 (1982) (count XIII).

9. Counts XIV and XV seek treble damages under New Mexico's civil RICO law, N.M.STAT. ANN. §§ 30–42–1 to 30–42–6, by alleging respectively that Merrill Lynch engaged in, and attempted to engage in, acts of fraud and/or extortion prohibited under New Mexico criminal statutes, N.M.STAT.ANN. §§ 30–16–6 (fraud) & 30–16–9 (extortion). Count XXI alleges that Merrill Lynch breached its contract with Michelson as a result of the manner in which it dealt with his account from 1976 through January 10, 1980.

Count XXXIII alleges that Merrill Lynch and the Exchanges violated section 4c of the Commodity Exchange Act, 7 U.S.C. § 6c (1982), because on January 10, 1980, the day his account

was liquidated, there were no *bona fide* buyers and sellers in the Chicago Board of Trade's silver market. As a result, the execution of the trade liquidating his account was a fictitious sale and/or accommodation trade prohibited under the Act. We note that Michelson has alleged Merrill Lynch executed "wash sales" to maintain the appearance of a legitimate silver market, *see* complaint paras. 130–31, at 37, and that such a claim might support a section 4c claim, provided, of course, that a private right of action is available under this provision. Count XXXIII, however, addresses only Merrill Lynch's act of liquidating Michelson's account and, for the reasons discussed above, is barred by *res judicata.* In light of this finding, we do not address Merrill Lynch's arguments that CEA section 4c does not confer a private right of action upon Michelson.

10. Merrill Lynch also argues that counts XIV, XV and XXXIII should be dismissed for failure to state a claim. We reserve decision as to these issues in light of the above disposition, although Merrill Lynch is referred to our denial of the non-exchange defendants' motion to dismiss Michelson's federal RICO claims discussed *infra.*

on the ground that Michelson has not alleged that bad faith tantamount to fraud was the dominant motivation underlying their conduct. They cite in support of their position *Sam Wong & Son v. New York Mercantile Exchange*, 735 F.2d 653 (2d Cir. 1984) (hereinafter *"Sam Wong"*), *aff'g in part and rev'g in part, Jordan v. New York Mercantile Exchange*, 571 F.Supp. 1530 (S.D.N.Y.1983). The Exchanges contend that the complaint fails to plead that the actions taken by them during the period in issue were motivated predominantly by self-interest.

The complaint pleads both that the Exchanges undertook actions in order to further the conspiracy among the defendants to corner the supply of silver in the world market, and also that the Exchanges failed to take emergency action soon enough to preserve an orderly silver market. The allegedly wrongful acts of the Exchanges include: that in September 1979, the Exchanges, aware of unusual trading activity in the silver market, wilfully or negligently increased the maximum permissible limits for daily price fluctuations (complaint paras. 27–29, at 17–18); that the Exchanges altered margin requirements in furtherance of the conspiracy (complaint para. 41, at 20); and that the Exchanges finally took action in January of 1980 when silver prices reached their peak (complaint para. 51, at 22).

The Court of Appeals for this Circuit has recently established the pleading standard for claims against commodity exchanges and their officials who have taken unlawful actions. "[W]hen self-interest or other ulterior motive unrelated to proper regulatory concerns is alleged to constitute the sole or the dominant reason for the exchange action, a complaint is sufficient even though the action was not beyond the bounds of reason." *Sam Wong, supra,* 735 F.2d at 677; *see also Bishop v. Commodity Exchange, Inc.,* 581 F.Supp. 1278, 1279 (S.D.N.Y.1984). We agree with the defendants that Michelson has not alleged that "the sole or the dominant reason" supporting the Exchanges' actions was

self-interest or ulterior motive, and we accordingly find that the complaint's allegations of Exchange misconduct are insufficient to state a claim against them.

As to Michelson's allegations regarding the Exchanges' failure to take emergency actions, the complaint's principal allegation is that the Exchanges were aware of the unusual silver trading activity responsible for the rise in prices and instability in the market, that the Exchanges were under a duty to take "emergency actions" to preserve an orderly market in view of the past business practices of the Hunts and Conti, and that such actions were either not taken, untimely, piecemeal, or were taken in bad faith (complaint para. 78, at 27).

The Exchanges argue that the thrust of Michelson's complaint seems to be that action was not taken soon enough. *See* Exchanges' Memorandum of Law in Support of Motion to Dismiss at 7. They urge us to adopt Judge Friendly's reasoning in *Sam Wong, supra,* and hold that there exists no private right of action under the Commodity Exchange Act against an exchange for not acting "soon enough."

Judge Friendly, writing for the *Sam Wong* court, pointed out that *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Curran,* 456 U.S. 353, 102 S.Ct. 1825, 72 L.Ed.2d 182 (1982) (hereinafter *"Curran"*), endorsed a line of cases holding that a private right of action may be brought against an exchange for failing to maintain an orderly silver market by not enforcing provisions of the CEA, CFTC regulations or contract market rules. *Sam Wong, supra,* 735 F.2d at 670 (citing *Miller v. New York Produce Exchange,* 550 F.2d 762, 766–67 (2d Cir.), *cert. denied,* 434 U.S. 823, 98 S.Ct. 68, 54 L.Ed.2d 80 (1977)); *accord Gordon v. Hunt,* 558 F.Supp. 122, 123–24 (S.D.N.Y.1983); *Strax v. Commodity Exchange, Inc.,* 524 F.Supp. 936, 943 (S.D.N.Y.1981). He went on to note:

The question whether a private right of action should be available for failure by the [New York Produce] Exchange to take emergency action as soon as it should is closer. Although *Miller [v.*

*New York Produce Exchange]* assumed such a right of action, substantial arguments can be made to the contrary. No rule of the Exchange expressly required it to take such action. Just as we have concluded that Congress deemed § 8a(7), 7 U.S.C. § 12a(7), empowering the CFTC to order the making of new rules, to be a sufficient remedy for an exchange's failure to do this, it could well have considered § 8a(9), 7 U.S.C. § 12a(9), empowering the CFTC to direct a contract market to take emergency action, to be sufficient to deal with the problem of an exchange's dilatoriness in exercising its own powers. Here again the silence of the 1982 statute is evidence that Congress has no wish for a private cause of action for a failure by an exchange to exercise its discretionary power to declare an emergency as soon as plaintiff thinks it should.

*Sam Wong, supra,* 735 F.2d at 670.[11]

■ The foregoing analysis has led us recently to question whether a plaintiff in another one of the silver cases could state a claim against an exchange based upon the allegation that the exchange acted too late when it acted in January of 1980 to stabilize the volatile silver market. *See de*

*Atucha v. Commodity Exchange, Inc.,* 608 F.Supp. 510, 512 & n. 5 (S.D.N.Y.1985) (citing *Sam Wong* ). In this case we agree with the Exchanges that for the reasons stated above by Judge Friendly, the allegation of failure by an exchange to take emergency action is insufficient in itself to state a claim against the Exchanges.

■ On the other hand, a complaint alleging that an exchange, out of its own self-interest, intentionally failed to maintain an orderly market in silver futures contracts, in violation of the Commodity Exchange Act and the CFTC's and exchange's rules and regulations, would appear to state a viable private right of action against the exchange. *See, e.g., Gordon v. Hunt, supra,* 558 F.Supp. at 123–24; *see also Curran, supra,* 456 U.S. at 371, 102 S.Ct. at 1835; *Minpeco, S.A. v. ContiCommodity Services, Inc.,* 552 F.Supp. 332, 340 (S.D.N.Y.1982). In view of the difficulties confronting *pro se* litigants like Michelson,[12] the complaint against the Exchanges will be dismissed with prejudice unless within thirty days of the date of filing of this Memorandum Michelson amends his complaint in order to cure the deficiencies noted herein.[13]

---

**11.** Judge Friendly concluded, however, that it was unnecessary for the court to decide this question because even if there did indeed exist a private right of action for "failure to declare or undue delay in declaring an emergency" the complaint in issue had failed to allege that the defendants acted in bad faith. *See Sam Wong & Son v. New York Mercantile Exchange,* 735 F.2d 653, 670 (2d Cir.1984).

**12.** *See Haines v. Kerner,* 404 U.S. 519, 520–21, 92 S.Ct. 594, 595–96, 30 L.Ed.2d 652 (1972) (per curiam) (noting that *pro se* complaints are held to less stringent standards than formal pleadings drafted by lawyers).

**13.** In light of the above disposition we do not reach the merits of the additional arguments raised by the Exchanges in support of dismissing individual claims asserted against them. However, since these arguments may have to be addressed in the not-too-distant future, and since Michelson will have the opportunity to propose amendments to his pleading, it is worthwhile to make the following observations: (1) It is questionable whether the complaint adequately alleges antitrust claims against the Exchanges for the reasons set forth in *Minpeco,*

*S.A. v. ContiCommodity Services, Inc.,* 552 F.Supp. 327, 331–32 (S.D.N.Y.1982). (2) Michelson's Commodity Exchange Act claims may not be untimely as a matter of law because a question of fact appears to exist as to whether the equitable doctrine of tolling precludes the application of the relevant statute of limitations, *see Stephens v. Clayton Brokerage Co.,* No. 82–5786, slip op. at 11–12 (N.D.Ill. Jan. 6, 1984), *reprinted in* the Exchange Defendants' Memorandum of Law In Support of Their Motion To Dismiss, at Exhibit B. In any event, for the reasons discussed *infra,* the complaint fails to allege a private right of action under Sections 6(c) and 13(b) of the Commodity Exchange Act. (3) The dismissal of the Exchanges from the New Mexico proceeding for lack of personal jurisdiction before the case was transferred here suggests that the Exchanges cannot be held liable to Michelson under New Mexico law, *see Pearson v. Northeast Airlines, Inc.,* 309 F.2d 553, 559 (2d Cir.1962), *cert. denied,* 372 U.S. 912, 83 S.Ct. 726, 9 L.Ed.2d 720 (1963). Finally, (4) the Supreme Court's recent ruling in *Sedima, S.P.R.L. v. Imrex Co.,* — U.S. —, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985), may allow Michelson to assert a RICO claim against the Exchanges.

## IV.

## "CERTAIN DEFENDANTS"

Nine of the non-exchange defendants listed in note 2 *supra* move to dismiss eight of the counts asserted against them (counts III, VII, IX–XIII & XVI) for failure to state claims upon which relief can be granted.

### A. *The Robinson-Patman Act (Count III)*

Count III of the complaint alleges that the broker and exchange defendants discriminated in price "or in other ways" among purchasers of silver in violation of 15 U.S.C. § 13. The defendants contend that this allegation fails to state a claim under the Robinson-Patman Act,[14] 15 U.S.C. § 13 (1982), because the Act prohibits price discrimination among "purchasers of commodities" and the services provided by brokers are not considered "commodities" within the scope of the Act. They cite in support of their position *Gordon v. New York Stock Exchange, Inc.*, 498 F.2d 1303, 1305 n. 7 (2d Cir.1974), *aff'd on other grounds,* 422 U.S. 659, 95 S.Ct. 2598, 45 L.Ed.2d 463 (1975).

The Robinson-Patman Act makes it "unlawful for any person engaged in commerce ... to discriminate in price between different purchasers of commodities of like grade and quality." 15 U.S.C. § 13(a) (1982). In *Gordon v. New York Stock Exchange, supra,* then-Chief Judge Kaufman noted that "there is no precedent for the assertion that brokerage services are 'commodities' within the meaning of the Robinson-Patman Act." 498 F.2d at 1305 n. 7.

■ Count III fails to specify the manner in which the broker and exchange defendants discriminated on the basis of price among silver purchasers. As a result, the only inference which can be drawn from a fair reading of the complaint is that these defendants provided services to their customers which differed depending upon the size of the customer account. We agree with the defendants that such an inference, discrimination among purchasers of brokerage services, does not support a claim under the Robinson-Patman Act and accordingly dismiss count III.

### B. *New Mexico Law (Counts VII, IX & XVI)*

■ While the non-exchange defendants have moved to dismiss three of Michelson's pendent state law claims on the merits for failure to state causes of action, we find that the Constitution's due process clause [15] bars the application of New Mexico law as to six of these defendants: ACLI, Placid Oil, and the four Hunts.[16] In *Pearson v. Northeast Airlines, Inc.*, 309 F.2d 553 (2d Cir.1962), *cert. denied,* 372 U.S. 912, 83 S.Ct. 726, 9 L.Ed.2d 720 (1963), the Court of Appeals held:

[A] state with substantial ties to a transaction in dispute has a legitimate constitutional interest in the application of its own rules of law. If, indeed, those connections are wholly lacking or at best tenuous, then it may be proper to conclude that the state has exceeded its constitutional power in applying its local law. See, e.g., *Home Insurance Co. v. Dick*, 281 U.S. 397, 50 S.Ct. 338, 74 L.Ed. 926 (1930); Currie, "The Constitution and the Choice of Law: Governmental Interests and the Judicial Function," 26 U.Chi. L.Rev. 9, 75 (1958).

309 F.2d at 559.

In this case, the six non-exchange defendants listed above were dismissed from the New Mexico proceeding which Michelson initiated in July of 1983, before the court *sua sponte* ordered the action trans-

---

**14.** The complaint alleges a violation of the Clayton Act.

**15.** The Fourteenth Amendment bars any state from depriving "any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1.

**16.** This argument was made by the Exchange defendants in support of their motion to dismiss the complaint's New Mexico state law claims.

ferred to this District, because, *inter alia,* they lacked the requisite "minimum contacts" with New Mexico to establish personal jurisdiction over them via the state's long-arm statute. *See Michelson v. Merrill Lynch, Pierce, Fenner and Smith,* No. 83–1099–M Civil (D.N.M. Oct. 7, 1983); *id.* (D.N.M. Oct. 28, 1983); *id.* (D.N.M. Nov. 10, 1983). Notwithstanding that Michelson resides in New Mexico and was allegedly injured there, the New Mexico court held that the facts were insufficient to establish that a cause of action had arisen in New Mexico. *See id.,* slip op. at 3–5 (D.N.M. Oct. 7, 1983), *reprinted in* the Exchange Defendants' Memorandum of Law in Support of Their Motion to Dismiss, at Exhibit C.

In light of this determination, we now find that the nexus between the Hunts, Placid Oil, ACLI and New Mexico is sufficiently tenuous so as to preclude Michelson as a matter of due process from relying upon the law of New Mexico as a basis for recovering from them. Although it is not a premise of the foregoing determination, we note that it is unlikely Michelson will be prejudiced by this finding because many of the New Mexico claims simply mirror his surviving federal causes of action. Accordingly, the complaint's pendent state law claims will be dismissed with prejudice as to the Hunts, Placid Oil and ACLI, unless Michelson amends his complaint within thirty days of the filing of this Memorandum to assert pendent claims under the law of New York.

With regard to the four remaining moving defendants (Merrill Lynch, Fustok, Prudential Bache and International Metals), we have not been presented with the necessary facts to determine whether claims against them based upon New Mexico law can survive. Accordingly, we reach no decision on their motion on this ground but leave it to the parties to file supplementary affidavits relating to the relevant facts if they wish to do so.

### C. *The Commodity Exchange Act ("CEA") (Counts X and XI)*

#### 1. *Private Rights of Action Under CEA §§ 6(c) & 13(b)*

Count X of the complaint alleges that the acts of all of the defendants constituted an illegal manipulation, an attempt to manipulate, or a conspiracy to manipulate the price of silver in violation of Sections 6(c), 9(b) and 13(b) of the Commodity Exchange Act.[17] 7 U.S.C. §§ 13b, 13(b) & 13c(b). The defendants move to dismiss the portion of this claim based on CEA Sections 6(c) and 13(b) on the ground that there exists no private right of action under those sections.

Section 13(b) provides in relevant part:

Any person who, directly or indirectly, controls any person who has violated any provision of this chapter or any of the rules, regulations, or orders issued pursuant to this chapter may be held liable for such violation *in any action brought by the [Commodities Futures Trading] Commission to the same extent as such controlled person.*

7 U.S.C. § 13c(b) (1982) (emphasis added).

The section unambiguously provides for an administrative forum, that is, the Commodities Futures Trading Commission ("CFTC"), to impose sanctions upon principals who control agents engaging in prohibited activities. We therefore find, for the reasons set forth in *Strax v. Commodity Exchange, Inc., supra,* 524 F.Supp. at 944, that there exists no private right of action under Section 13(b) of the CEA.[18]

The same reasoning applies to CEA Section 6(c), which provides in relevant part:

---

**17.** Although the complaint alleges violations of CEA sections 6c, 9b and 13b, we agree with the defendants that Michelson intended to allege the violations of the provisions noted in the text.

**18.** Although the parties make no mention of the fact in their briefs, we note that Section 13(b) of the CEA was not in effect in 1979–80 when the acts Michelson complains of are alleged to have taken place. *See* Futures Trading Act of 1982, § 230, Pub.L. No. 97–444, 96 Stat. 2294, 2319 (effective Jan. 11, 1983). This provides yet another ground for a finding that there exists no private right of action under Section 13(b).

If any person (other than a contract market) is manipulating or attempting to manipulate or has manipulated or attempted to manipulate the market price of any commodity, in interstate commerce, or for future delivery on or subject to the rules of any contract market, or otherwise is violating or has violated any of the provisions of this chapter or of the rules, regulations, or orders of the [Commodities Futures Trading] Commission thereunder, *the Commission may, upon notice and hearing ... make and enter an order directing that such person shall cease and desist therefrom*
. . . .

7 U.S.C. § 13b (1982) (emphasis added).

Again, the language of the provision unambiguously states that the CFTC is empowered to issue cease and desist orders and provides no basis for a private right of action. *Cf. Strax v. Commodity Exchange, Inc., supra,* 524 F.Supp. at 944. Accordingly, the defendants' motion to dismiss portions of count X is granted.

### 2. *CEA § 4b*

The non-exchange defendants also move to dismiss that portion of count XI alleging that the acts and conduct of all of the defendants "operated as a devise [sic] to cheat or defraud" contrary to Section 4b of the CEA, 7 U.S.C. § 6b (1982), through their creation of a corner, or attempt to corner the silver market. The defendants contend that the complaint does not plead the elements necessary to state a claim under Section 4b.

In *ACLI International Commodity Services, Inc. v. Banque Populaire Suisse,* 550 F.Supp. 144 (S.D.N.Y.1982), Judge Sofaer relied upon Judge Friendly's analysis of Section 4b in *Leist v. Simplot,* 638 F.2d 283, 322–23 (2d Cir.1980), *aff'd sub nom. Merrill Lynch, Pierce, Fenner & Smith v. Curran,* 456 U.S. 353, 102 S.Ct. 1825, 72 L.Ed.2d 182 (1982), as a basis for noting that "plaintiffs under § 4b must be persons defrauded in connection with a futures transaction conducted on their behalf, not simply any person defrauded in connection with any futures contract." *ACLI,* 550

F.Supp. at 145. Judge Sofaer went on to hold that a plaintiff who wishes to state a claim under CEA Section 4b "must allege fraud in a commodities transaction conducted for himself, or on his own behalf." *See id.* at 146.

■ We adopt this analysis and find that count XI does not allege facts sufficient to satisfy this pleading standard. Michelson's complaint relies upon a conclusory allegation that the defendants' acts amounted to fraud as a result of their efforts to corner the silver market. This allegation fails to specify the relationship between the parties so as to give rise to a cause of action under Section 4b. *See Leist v. Simplot, supra,* 638 F.2d at 323. That portion of count XI will accordingly be dismissed with prejudice unless within thirty days of the filing of this Memorandum Michelson re-pleads the claim to allege the nature of his relationship with the defendants which gives rise to a Section 4b claim.

We note the possibility that because *res judicata* prevents Michelson from challenging the propriety of Merrill Lynch's decision to issue margin calls or to liquidate his account, he may be unable to allege a cause of action under this provision.

### D. *RICO (Counts XII and XIII)*

■ Defendants' motion to dismiss counts XII and XIII, alleging that all of the defendants violated the federal RICO statute, 18 U.S.C. §§ 1961–68 (1982), is denied. Defendants' rely upon the pleading standard set forth by the Court of Appeals for the Second Circuit in *Sedima, S.P.R.L. v. Imrex Co.,* 741 F.2d 482 (2d Cir.1984), which has since been overturned by the Supreme Court's recent decision. *Id.,* — U.S. ——, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985). The criminal conviction of a defendant is no longer one of the predicate allegations necessary to support a RICO claim.

Accordingly, the nine non-exchange defendants' motion to dismiss is granted as to counts III and X, will be granted as to count XI unless Michelson re-pleads the

claim within thirty days, granted in part and reserved in part as to counts VII, IX and XVI, and denied as to counts XII and XIII.

## V.

### CONHEENY, CONTICOMMODITY SERVICES INC. & WALTUCH

The motions of defendants John J. Conheeny, ContiCommodity Services Inc. ("Conti") and Norton Waltuch to quash service and to dismiss the complaint are granted. So as to place the motions, and this decision, in context, we recount some of the finer details of the action's procedural history.

After this case was transferred here from New Mexico in December of 1983, Michelson was ordered, at a status conference held on February 3, 1984, to re-serve process upon those defendants who had been dismissed from the New Mexico proceeding for lack of personal jurisdiction. Michelson attempted to effect personal service upon these defendants by mailing copies of a summons and complaint to their respective law firms in March of 1984. Counsel to the defendants then wrote to us to object to the form of service on the ground that they were not authorized by their clients to accept service of process on their behalf. Michelson contested these assertions by, *inter alia*, filing default motions and "Requests for Admissions" directed at a number of defendants during the summer of 1984, and in September of 1984 we advised all counsel by letter that defendants contesting the sufficiency of Michelson's service should move to dismiss. Motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(5) were subsequently filed by ACLI, Conheeny, Conti, the Exchanges, the Hunts, Placid Oil, and Waltuch.

In December of 1984, we advised counsel of the need to conduct a hearing to resolve factual disputes between the parties. At the hearing conducted on January 30, 1985 Michelson was granted until March 15, 1985 to re-serve the defendants. After the hearing concluded, we attempted to assist Michelson by ordering the United States Marshal to "serve copies of the summons and complaint in this action on such defendants as the plaintiff requests the marshal to serve." *Michelson v. Merrill Lynch,* No. 83 Civ. 8898 (MEL) (S.D.N.Y. hearing of Jan. 30, 1985).

Conheeny, Conti and Waltuch premise their motions upon Michelson's continuing inability to perfect service of process upon them. The supporting affidavit of Richard Rosen of Paul, Weiss, Rifkind, Wharton & Garrison, then counsel to Conti and Waltuch, states that Michelson attempted to re-serve these defendants by leaving copies of a summons and complaint at an address in New York City, Four World Trade Center, at which the defendants no longer conduct business. William R. Glendon of Rogers & Wells, counsel to Conheeny, has submitted an affidavit stating that he received an envelope addressed to him in care of his law firm postmarked March 13, 1985 containing a copy of the complaint and a document entitled "certificate of service." Glendon goes on to state that neither he nor his law firm has ever been authorized by Conheeny to accept service of process on his behalf. In addition, Conheeny has submitted an affidavit stating that he has never been personally served in this action in either New York or New Mexico.

Michelson, in a response filed on May 13, 1985 to Conti's and Waltuch's motion,[19] concedes that the Marshal's office returned to him a summons and complaint noting that Conti and Waltuch no longer conducted business at Four World Trade Center. He also states that he attempted to re-serve both defendants on the same date that he prepared his response to their motion to dismiss.

■■■ While we are not unmindful of the special difficulties which confront *pro se*

---

**19.** Our records contain no response by Michelson to Conheeny's motion to dismiss. Nevertheless, it is highly unlikely that Michelson could

proffer an argument that would justify denying Conheeny's motion.

litigants, Michelson, like all parties to a litigation, cannot rely upon his *pro se* status as a shield from all mistakes but must at some point bear the consequences of his procedural errors. That point has been reached in this case. Michelson has been afforded numerous opportunities, over a period of more than one year, to correct the deficiencies in his methods of service. The defendants have repeatedly alerted Michelson to the flaws in his service of process and we have undertaken special efforts to assist him. Regrettably, however, Michelson has been unable or unwilling to cure the problems which prevent the attachment of jurisdiction over the moving defendants. *See SEC v. Gilbert,* 82 F.R.D. 723, 726 (S.D.N.Y.1979) ("jurisdiction attaches only when a defendant is properly served with the summons and complaint in an action.").

Michelson's attempt to re-serve Conheeny through his law firm fails to satisfy the requirements of Federal Rule of Civil Procedure 4 or New York law, which is governed by CPLR Section 308. Glendon's affidavit establishes that neither he nor Rogers & Wells are agents "authorized by appointment or by law to receive service of process." Fed.R.Civ.P. 4(d)(1); *see also Gibbs v. Hawaiian Eugenia Corp.,* 581 F.Supp. 1269, 1271 (S.D.N.Y.1984). The affidavit submitted by Conheeny further establishes that he was not personally served.

Similarly, the Rosen affidavit demonstrates that Michelson's service of process upon Conti's and Waltuch's former place of business was insufficient both under Rule 4 and New York law. *See generally Leab v. Streit,* 584 F.Supp. 748, 759–60 (S.D.N.Y.1984) (discussing New York cases). Additionally, Michelson failed to make any effort to correct his problem as to Conti and Waltuch until some time in early May of 1985, more than six weeks after the March 15 cut-off date for re-serving the defendants.

For the foregoing reasons, Conheeny's, Conti's and Waltuch's motions to quash service of process are granted, and because jurisdiction has not attached, their motions to dismiss the complaint are also granted.

\*   \*   \*   \*   \*   \*

In sum, Merrill Lynch's motion to dismiss counts III, VII, IX, XII–XV and XXI–XXXVI is granted in part, and decision is reserved as to that portion seeking to strike factual allegations; the motion to dismiss by the nine nonexchange defendants is granted as to counts III and X, granted in part and reserved in part as to counts VII, IX and XVI, and denied as to counts XII and XIII; the motions of John J. Conheeny, ContiCommodity Services Inc., and Norton Waltuch to quash service and dismiss the complaint are granted. Finally, Merrill Lynch's motion to dismiss counts XIV–XV, XXI and XXXIII, the motion made by the Hunts, Placid Oil and ACLI to dismiss the pendent state law claims, the Exchange defendants' motion to dismiss the complaint against them and the nine non-exchange defendants' motion to dismiss count XI will be granted unless within thirty days of the filing of this Memorandum Michelson amends his complaint in accordance with the ruling above. The defendants should submit appropriate orders of dismissal on November 1, 1985 if Michelson has not filed an amended complaint by that date.

It is so ordered.